UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

FELIPPE MARCUS,
        Plaintiff,

  v.

CITY OF BUFFALO,
OFFICER CALVIS McKNIGHT,
OFFICER VINCENT HUMPHREY,
COMMISSIONER BRYON LOCKWOOD,
LIEUTENANT RONNY BLATCHFORD,
THOMAS LYNCH,
TYLER FONVILLE,
AARON WATKINS,
JOSEPH JUSZKIEWICZ,

        Defendants.
_____

            **DECISION**
            **and**
            **ORDER**
          ------------------
            **REPORT**
            **and**
          **RECOMMENDATION**

         **20-CV-316JLS(LGF)**

APPEARANCES:   FELIPPE MARCUS, *Pro Se*
         2500 South Abilene Street
         P.O. Box 441058
         Aurora, Colorado 80044

         CAVETTE A. CHAMBERS
         CITY OF BUFFALO CORPORATION COUNSEL
         Attorney for Defendants
         DAVID M. LEE, Assistant Corporation Counsel,
          of Counsel
         1000 City Hall
         65 Niagara Street
         Buffalo, New York 14202

## JURISDICTION

   This matter was referred to the undersigned for all pretrial matters by order of

Hon John L. Sinatra, Jr. filed June 23, 2021 (Dkt. 26).  It is presently before the court on

Defendants' motion for Extension of Time to serve responses to Plaintiff's discovery

requests filed January 25, 2023 (Dkt. 124), Plaintiff's Motion To Strike and Enter Default

Judgment filed February 13, 2023 (Dkt. 129),[1] and Defendants' Motion for Judgment on the Pleadings pursuant to Fed.R.Civ.P. 12(c) or Summary Judgment pursuant to Fed.R.Civ.P. 56(a) (Dkt. 131).

## BACKGROUND and FACTS[2]

Plaintiff's Amended Complaint alleging Defendants used excessive force by use of a taser and other electrical shock devices against Plaintiff while in Defendants' custody, in violation of federal and state law was filed April 21, 2021.  By Decision and Order filed May 6, 2021 (Dkt. 17), Judge Sinatra dismissed Defendant Buffalo Police Department ("BPD") as a non-suable entity, (Dkt. 17 at 12), and dismissed, without prejudice, Plaintiff's state law claims for assault at battery and conversion (Dkt. 17 at 15).  Answers on behalf of all remaining John Doe Defendants were filed on June 3, 2021.  (Dkt. 21)  By Decision and Order filed June 16, 2021, Judge Sinatra reinstated Plaintiff's state common law claims for assault and battery and conversion.  (Dkt. 24). In accordance with Judge Sinatra's *Valentin*[3] order, the City of Buffalo Corporation Counsel provided the names of unidentified defendants and, upon compliance with the order, Calvis McKnight, Vincent Humphrey, Byron Lockwood, Ronnie Blatchford, Thomas Lynch, Tyler Fonville, Aaron Watkins, and Joseph Juszkiewicz were added to the case.  (Dkt. 21).  Thereafter, Defendants City of Buffalo, Fonville, Blatchford,

---

[1]  Discovery motions, including those for sanctions, are considered non-dispositive "unless the sanction employed disposes of a claim."  *Lan v. Time Warner, Inc.*, 2016 WL 928731, at *1 (S.D.N.Y. Feb. 9, 2016).  Nevertheless, "'[t]he critical issue here is what sanction the magistrate judge actually imposes,' not what sanction the moving party seeks."  *Seena International, Inc. v. One Step Up, Ltd.,* 2016 WL 2865350, at *10 (S.D.N.Y. May 11, 2016) (quoting 12 C. Wright, A. Miller & R. Marcus, FEDERAL PROCEDURE AND PRACTICE § 3068.2 at 383 (Thompson Reuters 2014)).
[2]  The Facts are taken from the pleadings and papers filed in this action.
[3]  *Valentin v. Dinkins*, 121 F.3d 72 (2d Cir. 1997) (*per curiam*) (requiring governmental defendants to provide identifications of Doe defendants in § 1983 actions).

Humphrey, Lockwood, McKnight, and Watkins were served and answered the Amended Complaint (Dkts. 28, 48, 49).  The record does not indicate Defendants Juszkiewicz and Lynch have been served, however, these Defendants have participated in further proceedings.  *See* Dkt. 59 (Letter, dated February 28, 2022, from Defendants' Attorney Request Appointment of a Mediator), Dkt. 72 (motion for extension of time to file motion for pretrial order).

At approximately 9:30 p.m. on March 30, 2018, after ingesting an unknown amount of cocaine at a local tavern, Plaintiff was subjected to a traffic stop by Buffalo Police officers, Defendants McKnight and Humphrey, for improper registration plates on his vehicle.  During a consent search, Defendant McKnight discovered cocaine in Plaintiff's vehicle and arrested Plaintiff for criminal possession of a controlled substance. Plaintiff was taken to the City of Buffalo City Court Lockup on West Eagle Street in downtown Buffalo where Plaintiff was "booked," Dkt. 131 ¶ 2, and placed in a cellblock, Cell No. 12, to await a City Court appearance.  Just before midnight, at approximately 11:56 p.m., while seated on a bench in the cell, Plaintiff experienced what appeared to Defendant Blatchford, who was standing outside the cell, as a seizure.  Blatchford Declaration ¶¶ 2-3 (Dkt. 131 at 11).  Blatchford, at the time, was the duty Lieutenant for the cell block.  *Id.* (¶ 1).  Upon observing Plaintiff falling to the floor of the cell block, Blatchford entered the cell and turned Plaintiff on his side.  Blatchford then directed a cellblock attendant[4] to call for an ambulance to take Plaintiff to the hospital.  Defendant McKnight, after learning of Plaintiff's seizure, went to Plaintiff's cell and stayed with Plaintiff until the paramedics arrived.  Upon arrival of the paramedics (or "EMTs"), at

---

[4]  The record does not indicate which cellblock attendant, Defendant Lynch, Fonville, Watkins or Juszkiewicz, made the call.

12:40 a.m., approximately 40 minutes after Plaintiff's seizure, with a gurney for transporting patients, Plaintiff, who is over six feet tall and weighed close to 250 pounds, and was then still laying on the floor of the cell block, physically resisted the efforts of the paramedics and other Defendants, not including Humphrey, to place Plaintiff on the gurney, necessitating that the officers and paramedics grapple with Plaintiff in order to place Plaintiff on the gurney with restraints including straps and handcuffs.  After struggling with Plaintiff for about 10 minutes, Blatchford and the EMTs and others succeeded in securing Plaintiff to the gurney allowing Plaintiff to be transported to the Erie County Medical Center ("ECMC") where he was treated for three seizures, the first in the cell, a second while Plaintiff was transported in the ambulance to the hospital, and a third after a CT scan in the hospital.  During the encounter with Plaintiff, Blatchford denies striking Plaintiff or using a taser on Plaintiff nor did Blatchford observe any of the other officers involved in the incident do so.  Plaintiff was conscious and able to talk when he was removed from the cell at approximately 12:50 a.m.  Like Lt. Blatchford, Defendant McKnight avers he did not use a taser gun on Plaintiff, and did not physically strike Plaintiff while in custody, nor did he observe any other person then in the cell block do so.  Plaintiff was later turned over to Colorado police on an extradition warrant but his personal property, including $3,620, was not returned to him.  Plaintiff's Declaration, Dkt. 138, at ¶¶ 6, 7.  Defendant Humphrey was involved in Plaintiff's arrest but did not assist in restraining Plaintiff after Plaintiff's initial seizure.  He denies striking or tasing Plaintiff and did not observe any other officers do so.  In Plaintiff's June 28, 2018 Section 50-h examination,[5] Defendants Exh. B, Dkt. 131-1 at 8, Plaintiff makes no

---

[5] Conducted pursuant to N.Y. Gen. Mun. Law § 50-h.

mention of being tased or assaulted while in Defendants' custody.

In a Decision and Order filed December 1, 2022 (Dkt. 119), the court granted Plaintiff's motions to compel (Dkts. 102, 103, 108) and directed Defendants to respond to Plaintiff's discovery requests within 33 days ("the December 1, 2022 D&O"). On December 20, 2022, the court granted Defendants' request to extend the period for Defendants' compliance with the December 1, 2022 D&O to February 2, 2023 (Dkt. 123). On January 25, 2023, Defendants again requested, pursuant to Fed.R.Civ.P. 6(b)(1)(A), an extension of time to February 23, 2023 (Dkt. 124) ("Defendants' Second Request for Extension of Time). Plaintiff's opposition to Defendants' Second Request for Extension of Time was filed February 8, 2023 (Dkt. 128). Thereafter, Plaintiff filed, on February 13, 2023, Plaintiff's Motion to Strike and Enter Default Judgment (Dkt. 129) (Plaintiff's motion"); Defendants' response to Plaintiff's motion was due March 8, 2023 (Dkt. 130). Defendants' response to Plaintiff's motion was filed March 6, 2023 (Dkt. 135) ("Defendants' Response"). In Defendants' Response, Defendants stated Defendants had responded to Plaintiff's interrogatories on February 3, 2023 (Dkt. 135 ¶ 6) and provided responsive documents on February 7, 2023 (Dkt. 135 ¶ 7). Defendants explained that any delays in providing discovery in this case a few days after the court's February 2, 2023 extension resulted from insufficient staffing, severe weather in the Buffalo area, and attorney workload, and that such delay was not the result of neglect or bad faith. Dkt. 135 ¶ 8.

On February 21, 2023, Defendants moved for judgment on the pleadings or summary judgment (Dkt. 131) together with Attorney Declaration [David M. Lee, City of Buffalo Assistant Corporation Counsel] (Dkt. 131) attaching Exhibits A (copy of

Plaintiff's June 28, 2018 Notice Claim), B (Plaintiff's N.Y. Gen. Mun. Law Section 50-h hearing testimony), C (a copy of video tape footage of the March 30-31, 2018 incident involving Plaintiff and Defendants) and D (e-mail dated March 31, 2018 from Defendant Lt. Blatchford to Robert Dingwall, BPD's Camera Systems Administrator, requesting preservation of videotape of the March 30-31, 2018 incident) ("the video"), Declaration of Robert Dingwall (Dkt. 131 at 5-6); Declaration of Defendant Calvis McKnight (Dkt. 131 at 7-8); Declaration of Defendant Vincent Humphrey (Dkt. 131 at 9-10), and Declaration of Defendant Ronny Blatchford (Dkt. 131 at 11-25) (each Declaration is dated February 17, 2023); Defendants' Statement of Facts (Dkt. 131 ¶¶ 1-19); together with Memorandum of Law (Dkt. 131 at 16-24) ("Defendants' Memorandum of Law") ("Defendants' motion").

In opposition to Defendants' motion, Plaintiff filed, on March 23, 2023, Plaintiff's Response In Opposition To Defendant's [*sic*] Motion For Summary Judgment (Dkt. 138) consisting of a Statement of Facts (Dkt. 138 at 2-3), Memorandum of Law (Dkt. 138 at 3-14), Affidavit/Declaration of Felippe Marcus (Dkt. 138 at 16-25) ("Plaintiff's Declaration"), together with Exhibits 1-15 ("Exh(s). __ to Plaintiff's Declaration") (Plaintiff's Opposition").  On April 18, 2023, Defendants filed a Memorandum of Law in reply to Plaintiff's Opposition (Dkt. 143) ("Defendants' Reply").  On May 15, 2023, Plaintiff filed Plaintiff's Statement of Facts (Dkt. 144 at 1) and Plaintiff's Answers To Defendant's [*sic*] Memorandum of Law (Dkt. 144 at 2-10).  On August 3, 2021, Plaintiff filed numerous screenshots taken from the video together with flash drive and a July 22, 2021 letter to Plaintiff from Forensic Pursuit of Denver, Colorado describing three "areas of interest" identified by Plaintiff including three screenshots showing a small silver

object in a person's hand near Plaintiff's body which have been filed as Court Exhibits A, B, and C to facilitate further judicial review.

In his Declaration, Robert Dingwall, Buffalo Police Department's Camera System Administrator ("Dingwall"), states that at Lt. Blatchford's request (Defendants' Exhibit D) (Dkt. 131-1 at 20), all video footage from cameras 26, 29 and 30, the only cameras able to record events at the cell block area, particularly Cell No. 12 where the incident with Plaintiff took place, for the time period 11:55 p.m. to 12:51 a.m. March 30-31, 2018, were preserved in DVD form.  Defendants submitted a copy of the DVD containing the video footage of the cameras in support of Defendants' motion.  *See* Defendants' Exh. C (Dkt. 131-1 at 18).  Plaintiff filed three copies of the same DVD.  *See* Dkts. 8, 90 and 95.  According to Dingwall, camera 26, which records actions within a portion of Cell No. 12 runs continuously, whereas cameras 29 and 30 are motion detection operated, meaning they record only when motion is detected.  Dkt. 131 at 5 ¶¶ 5, 6.  Thus, when the pertinent video recordings appear to "skip ahead" it is because there was no motion within the range of the camera, not because of any redaction.  (Dkt. 131 at 5 ¶ 6)  Dingwall reviewed the entire video and avers that the video is complete and unredacted.  *Id*. at ¶ 8.  Dingwall also avers that the video was made at or near the time of events was recorded, was kept in the course of regularly conducted business activity by the BPD and that it was the regular practice of such business activity to make and retain the video.  Dkt. 131 at 6 ¶ 9.  On May 1, 2023, a BPD vendor completed a system upgrade to allow for replacement of the four existing cameras in the BPD group holding cells including Cell No. 12 where the incident involving Plaintiff took place.  *See* Plaintiff's Exh. 2 at 31.  During this upgrade, a technical problem caused the loss of all video

recordings for the cellblock prior to May 11, 2018.  *Id.*  Plaintiff does not dispute this information.

In Plaintiff's Opposition, Plaintiff "expressly denies having a seizure like activity," Dkt. 138 at 2.  Plaintiff avers he has no history of seizures.  Dkt. 138 at 19, ¶ 27. Plaintiff asserts, instead, that if Plaintiff exhibited any physical symptoms of seizure, such resulted from Plaintiff being physically assaulted, subjected to "electoral [*sic*] shock an [*sic*] being tased repeatedly."  Dkt. 138 at 2.  Plaintiff further states that "video footage depicts red lights, indicating the taser was triggered," Plaintiff's Statement of Facts, Dkt. 138 at 2, by Defendants, and that the video shows an officer with "a taser in his hand."  Plaintiff's Statement of Facts.  Dkt. 144 at 1.  Plaintiff avers Defendant McKnight used his taser on Plaintiff a "number times."  Plaintiff's Declaration ¶ 45, Dkt. 138 at 21.  Plaintiff further avers Defendants used a taser on Plaintiff while attempting to subdue Plaintiff, Plaintiff's Declaration ¶ 37, and place him on the gurney.  Dkt. 138 at 20.  Plaintiff's Statement of Facts includes 15 exhibits including disciplinary records for Defendants Juszkiewicz (Exh. 3), Fonville (Exh. 4), McKnight, and Blatchford (Exh. 15), certain of Defendants' responses to Plaintiff's Request for Admissions, Exhs. 5, 6, 7, 8, 9, 10, 11, a response from the City of Buffalo Corporation Counsel's office indicating no Use of Force Report was found in City records concerning Plaintiff's incident on March 30-31, 2018 (Exh. 11), Plaintiff's ECMC medical records including Plaintiff's discharge report from ECMC on April 3, 2018 (Exh. 12), a copy of a photographs purporting to show a taser gun in an officer's hand and a silver object in an officer's hand during the incident (Exh. 13), and two copies of a report dated July 21, 2021 by one Angela Malley of Forensic Pursuit, located in Denver, Colorado, who reviewed the video of the incident

including screenshots of the video purporting to show red beams of light in Cell No. 12 during the incident (Plaintiff's Exh. 14) (Dkt. 138 at 59-60); Plaintiff's Declaration ¶ 55, Dkt. 138 at 23.

Defendants also submit a copy of Plaintiff's Notice of Claim dated May 11, 2018, Defendants' Exh. A (Dkt. 131-1 at 2-5), in which Plaintiff asserts damages for personal injuries suffered by Plaintiff in connection with Plaintiff's detention by Defendants on March 30-31, 2018.  The Notice of Claim does not include a claim for conversion of $3,620 of Plaintiff's personal funds or for the other items of Plaintiff's property allegedly taken from Plaintiff by Defendants McKnight and Humphrey when Plaintiff was arrested. *See* Dkt. 131-1 at 2-5 (*passim*).

## DISCUSSION

(1)   Defendants' Second Request for Extension of Time and Plaintiff's Motion to Strike and Enter Default Judgment.

As noted, Background and Facts at 5, following the court's grant of an extension of time for Defendants to comply with the December 1, 2022 D&O to February 2, 2023 (Dkt. 123), Defendants again requested, on January 25, 2023, a further extension of time to February 23, 2023 to comply (Dkt. 124), citing Plaintiff's voluminous interrogatories and document requests, counsel's lost work time resulting from recent severe weather in the Buffalo area, and counsel's work-load (Dkt. 124 at 2, 3). Plaintiff's opposition included assertions that Defendant's delay in providing the discovery required by the December 1, 2022 D&O was unexcused.  Dkt. 128 at 1-2. Plaintiff's opposition to Defendants' request was reinforced on February 13, 2023 by Plaintiff's Motion to Strike and Enter Default Judgment (Dkt. 129) as sanctions for

Defendants' delay in complying with the December 1, 2022 D&O.  While the Defendants' Second Request for Extension of Time was awaiting decision, Defendants fully complied with Plaintiff's outstanding discovery required on February 3, 2023.  (Dkt. 135 ¶¶ 6, 7).  As a result, the court finds Defendants' motion for a further extension of time within which to comply with the December 1, 2022 D&O (Dkt. 124) is now moot and therefore should be DISMISSED.

As to Plaintiff's motion to strike Defendants' Answer or grant a default judgment based on Defendants' delay in compliance with the December 1, 2022 D&O, the court finds such requests, under the circumstances presented, to be without merit.  While such relief is available, *see* Fed.R.Civ.P. 37(b)(2)(A) (permitting sanctions for a party's failure to comply with a discovery order) such severe sanctions should not be the first ordered by the court.  *World Wide Polymers, Inc. v. Shinkong Synthetic Fibers Corp.*, 694 F.3d 155, 159-60 (2d Cir. 2012) (citing *Valentine v. Museum of Modern Art*, 29 F.3d 47, 49-50 (2d Cir. 1994) , and *John B. Hull v. Waterbury Petroleum Products, Inc.*, 845 F.2d 1172, 1177 (2d Cir. 1988)).  Additionally, Defendants have complied with the December 1, 2022 D&O and provided additional discovery, albeit somewhat belatedly. Significantly, Plaintiff does not indicate in Plaintiff's motion such compliance was deficient.  Moreover, the reasons – Plaintiff's voluminous discovery requests, severe weather and attorney work-load – given for Defendants' non-compliance are reasonable.  Accordingly, the court finds no grounds for the severe sanctions of striking Defendants' Answers or entry of default judgment as a discovery sanction to be warranted based on the reasons for Defendants' delay in compliance with the December 1, 2022 D&O.  Plaintiff's Motion to Strike and for Default Judgment (Dkt. 129)

should therefore be DENIED.

(2)     <u>Defendants' Motion For Judgment on the Pleadings or Summary Judgment</u>.

Defendants move pursuant to Fed.R.Civ.P. 12(c) ("Rule 12__"), for judgment on the pleadings.  "'The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical to that for granting a Rule 12(b)(6) motion for failure to state a claim.'"  *Lively v. WAFRA Inv. Advisory Grp., Inc.*, 6 F.4th 293, 301 (2d Cir. 2021) (quoting *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020)).  "'To survive a Rule 12(c) motion, [the plaintiff's][6] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010) (bracketed material in original)).  "'The assessment of whether a complaint's factual allegations plausibly give rise to an entitlement to relief ... calls for enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of illegal conduct.'"  *Id.* (quoting *Lynch*, 952 F.3d at 75 (internal quotation marks omitted)).  In making this assessment, all reasonable inferences must be drawn in the plaintiff's favor.  *Id.* (citing *Johnson v. Rowley*, 569 F.3d 40, 43 (2d Cir. 2009)).  Like a motion under Rule 12(b)(6), a motion under Rule 12(c) may be filed before discovery is complete.  *See* Fed. R. Civ. P. 12(c) (permitting motion "[a]fter the pleadings are closed—but early enough not to delay trial").  Nevertheless, "[u]ntil both parties have an opportunity to test their evidence at summary judgment or trial, we must accept the non-movant's pleading as true and decline to weigh competing allegations asserted by the moving party."  *Lively*, 6 F.4th at 301.

"'[J]udgment on the pleadings is not appropriate if there are issues of fact which if

---

[6] Unless otherwise indicated, bracketed material has been added.

proved would defeat recovery, even if the trial court is convinced that the party opposing the motion is unlikely to prevail at trial.'" *Lively*, 6 F.4th at 301 (quoting *Dist. No. 1, Pac. Coast Dist., Marine Eng'rs Beneficial Ass'n v. Liberty Mar. Corp.*, 933 F.3d 751, 761 (D.C. Cir. 2019) (internal quotation marks omitted)); *see also Richards v. Mitcheff*, 696 F.3d 635, 637 (7th Cir. 2012) (explaining that dismissal under Rule 12(c) is appropriate for self-defeating complaints—*i.e.*, complaints "whose allegations show that there is an airtight defense").  Accordingly, "where a 'question [of fact] is in dispute, it [is] improper for the district court to answer it on a motion for dismissal on the pleadings.'"  *Id.* at 302 (quoting *Sheppard v. Beerman,* 18 F.3d 147, 151 (2d Cir. 1994); and citing 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 (3d ed. 2021) ("[J]udgment on the pleadings only has utility when all material allegations of fact are admitted or not controverted in the pleadings and only questions of law remain to be decided by the district court.")).  A court thus "may consider undisputed allegations of fact on a Rule 12(c) motion under the same standard as Rule 12(b)(6), but it may not use a motion for judgment on the pleadings to weigh disputed factual allegations." *Id.*  In considering a Rule 12(b)(6) motion, the Supreme Court requires application of "a 'plausibility standard,' which is guided by '[t]wo working principles.'"  *Harris v. Mills*, 572 F.3d 66, 71-72 (2d Cir. 2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "First, although 'a court must accept as true all of the allegations contained in a complaint,' that 'tenet' is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'"  *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678).  "'Second, only a complaint that states a plausible claim for

relief survives a motion to dismiss,' and '[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679).  To survive a motion for judgment on the pleadings, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).  "A claim will have 'facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Ashcroft*, 556 U.S. at 678); *see Twombly*, 550 U.S. at 570 (the complaint must plead "enough facts to state a claim to relief that is plausible on its face").  The factual allegations of the complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true." *Twombly*, 550 U.S. at 570.

"In ruling on a 12(b)(6) motion, and thus on a 12(c) motion, a court may consider the complaint as well as 'any written instrument attached to [the complaint] as an exhibit or any statements or documents incorporated in it by reference.'" *Kalyanaram v. American Ass'n of University Professors at New York Institute of Technology, Inc.*, 742 F.3d 42, 44 n. 1 (2d Cir. 2014) (quoting *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 130 (2d Cir. 2001)) (bracketed material in original).  On a motion for judgment on the pleadings, "'a court may consider ... matters of which judicial notice may be taken, [and] documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit.'" *Id.* (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d

Cir. 2002) (internal quotation marks omitted; bracketed material and ellipses in original)).  In evaluating a civil complaint filed by a *pro se* litigant, courts are required to give the pleading a liberal construction.  *McEachin v. McGinnis*, 357 F.3d 197, 200 (2d Cir. 2004) ("When the plaintiff proceeds *pro se, . . .* a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.").

Plaintiff's excessive force, deliberate indifference and failure to intervene and supervise claims are asserted pursuant to 42 U.S.C. § 1983 ("§ 1983"), which permits imposing civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States.  *Patterson v. County of Oneida, New York*, 375 F.3d 206, 225 (2d Cir. 2004) (quoting 42 U.S.C. § 1983.  Section 1983, however, "'is not itself a source of substantive rights.'"  *Id.* (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  Rather, § 1983 "merely provides 'a method for vindicating federal rights elsewhere conferred' . . . ."  *Id.*  The elements of a § 1983 claim include (1) the deprivation of a federal constitutional or statutory right, and (2) by a person acting under color of state law.  *Velez v. Levy*, 401 F.3d 75, 84 (2d Cir. 2005) (citing *Gomez v. Toledo*, 446 U.S. 635, 640 (1980)).  Thus, "[t]he first step in any such claim is to identify the specific constitutional right allegedly infringed."  *Id.* (citing *Graham v. Connor*, 490 U.S. 386, 394 (1989); and *Baker*, 443 U.S. at 140).

"'It is well settled in this circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite' to a section 1983 claim."  *Delee v. Hannigan*, 729 Fed.Appx. 25, 31 (2d Cir. 2018) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (internal quotation marks and citations omitted)).  Before the

Supreme Court decided *Iqbal*, supervisory liability claims for § 1983 claim were

analyzed according to the framework set forth in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir.

1995), *abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir.

2020), specifically providing that

> The personal involvement of a supervisory defendant may be shown by evidence
> that: (1) the defendant participated directly in the alleged constitutional violation,
> (2) the defendant, after being informed of the violation through a report or appeal,
> failed to remedy the wrong, (3) the defendant created a policy or custom under
> which unconstitutional practices occurred, or allowed the continuance of such a
> policy or custom, (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5) the defendant exhibited
> deliberate indifference to the rights of [the plaintiffs] by failing to act on
> information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.

The Second Circuit recently clarified that following *Iqbal*, "there is no special rule for

supervisory liability.  Instead, a plaintiff must plead and prove that each Government-

official defendant, through the official's own individual actions, has violated the

Constitution."  *Tangreti*, 983 F.3d at 618-19.  Relevantly, "[t]he factors necessary to

establish a [§ 1983] violation will vary with the constitutional provision at issue because

the elements of different constitutional violations vary," and "[t]he violation must be

established against the supervisory official directly."  *Id.* (quotations and citations

omitted).  Failing to correct another officer's violation does not suffice; rather, after *Iqbal*,

the "active conduct" standard necessary to impose § 1983 liability on a supervisor

requires the supervisor either directly participate in the alleged constitutional violation or

create a policy or custom under which the alleged unconstitutional practices occurred,

*i.e.*, only the first and part of the third categories of supervisory liability identified in

*Colon* survive.  *Tangreti*, 983 F.3d at 617 n.4 (citing cases).  Since *Tangreti* was

15

decided, courts within the Second Circuit repeatedly have dismissed claims based on

an asserted notification to a supervisory official of an alleged wrong by way of a letter,

grievance, or appeal of a disciplinary action.  *See*, *e.g.*, *Smart v. Annucci*, 2021 WL

260105, at * 5 (S.D.N.Y. Jan. 26, 2021) (dismissing *pro se* complaint alleging

defendants, both high-ranking prison officials who were alleged to have failed to act on

the plaintiff's complaints, because such allegations did not support an inference that the

defendants, through their own individual actions, violated the Constitution, stating

"[f]ailing to correct another officer's violation does not suffice" to establish a supervisor's

direct violation of a plaintiff's constitutional rights).

(3)     <u>Plaintiff's § 1983 Claims</u>.

        In the Amended Complaint (Dkt. 15), Plaintiff alleges six claims including § 1983

claims based on Defendants' assault on Plaintiff, and certain Defendants' failure to

supervise and train participating officers, and negligent hiring (Count I); Defendants'

deliberate indifference to excessive use of force against Plaintiff (Count III); Defendant

John Doe's failure to intervene with regard to the on-going assault of Plaintiff (Count IV);

and a § 1983 violation against Defendant City of Buffalo (Count VI).  Defendants

contend the Amended Complaint fails to plausibly allege how each Defendant was

personally involved in Plaintiff's excessive force § 1983 claim such that Defendants'

Rule 12(c) motion should be granted on this claim.  Defendants' Memorandum at 18

(Dkt. 131 at 18).  Alternatively, Defendants request Defendants' motion for summary

judgment be granted on Counts I, II, III, and IV.  Defendants' Memorandum at 18-25

(Dkt. 131 at 18-25); Defendants' Reply ¶¶ 15, 16 (contending the Amended Complaint

does not allege a so-called *Monell* claim for municipal liability against the City

Defendant based on Defendant's policy or practice).

A fair reading of the Amended Complaint supports a finding that the Amended Complaint fails to name a specific Defendant as a person who committed any violation of Plaintiff's Fourth Amendment right to be protected against excessive force by police. Further, as indicated, Background and Facts, *supra,* at 4, with the exception of Defendant McKnight, none of Plaintiff's responses to Defendants' motion assert any specific misconduct by any named Defendant.  *See, e.g.,* Plaintiff's Statement of Facts, Dkt. 138 at 2 (after booking process Plaintiff was "assaulted by Defendant's" [*sic*]); Dkt. 138 at 2 ("Still photo from video showing Defendant's [*sic*] with a taser gun"); Dkt. 138 at 3 ("Defendant [*sic*] used excessive force on him when they tased him, and electoral shocked him several times").  In none of these unsworn assertions does Plaintiff attribute the specific action taken to any particular Defendant.  As to Defendant McKnight, although Plaintiff avers that McKnight tased Plaintiff several times, *see* Plaintiff's Declaration ¶ 45, Dkt. 138 at 21, the Amended Complaint contains no such allegation.  Plaintiff's failure in the Amended Complaint to associate any of the alleged actions inflicted on him while in Cell No. 12 – assault, tasing, electrocution – with an identifiable Defendant, therefore fails to plausibly satisfy the personal involvement requirement for a valid § 1983 claim.  *See Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021) (affirming district court's dismissal of § 1983 claims where plaintiff failed to allege requisite personal involvement in the alleged constitutional deprivation). Additionally, because Plaintiff's *Monell* claim, *see* Dkt. 15 ¶ 20 (Plaintiff asserts a § 1983 claim "against the City of Buffalo"), against Defendant City of Buffalo is dependent upon a finding "that the plaintiff suffered a tort in violation of federal law committed by the

municipal actors and, in addition, that their commission of the tort resulted from a custom or policy of the municipality," *Askins v. Doe No. 1,* 727 F.3d 248, 253 (2d Cir. 2013), Defendants' motion should also be GRANTED as to Defendant City. Accordingly, Defendants' Rule 12(c) motion directed to Counts I, III, IV and VI should be GRANTED.[7]

Alternatively, summary judgment should be granted as to each of Plaintiff's federal claims and the Plaintiff's state law battery claim in Count II.[8]  Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a) and (b); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for

---

[7]  Plaintiff's conversion claim (Count V) is addressed, *infra,* at 25-26.
[8]  The court notes that although the Amended Complaint asserts Plaintiff's claims are also based on the New York Constitution, (*see* Dkt. 15 at ¶ 8), Plaintiff does not further rely on this theory and it should therefore be considered to have been abandoned by Plaintiff.  Accordingly, it is not further addressed by the court.

the nonmoving party").  "A fact is material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."  *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, come forward with evidence that would be sufficient to support a jury verdict in its favor.  *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995).  "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial."  *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

Defendants rely on the video of the scenario which took place between Plaintiff and Defendants in Cell No. 12 of the BPD lock-up on March 30-31, 2018 and the Declarations of Defendants Blatchford, McKnight and Humphrey ("Defendants' Declarations").  A careful review of the video, which has been sufficiently authenticated by Dingwall's affirmation, *see McCary v. City of Albany,* 2017 WL 1082125 at *5 (W.D.N.Y. Aug. 1, 2017) (videos require authentication pursuant to Fed.R.Civ.P. 901(a)

requiring evidence showing how it was recorded, collected and time stamped),

corroborates the averments in Defendants' Declarations.  First, at no time during the

video is any Defendant shown to have used excessive physical force on Plaintiff

particularly by using a taser gun or other electrical device as Plaintiff asserts.  The

court's review of the video also fails to find any support for the opinion of Forensic

Pursuit (Dkt. 138 at 60) that red beams of light were observed in the cell.  Even if

observed, a red beam of light which is a sighting feature of a taser gun, does not

necessarily mean that a taser beam was actually fired by the gun.  *See Nur v. Sanders*,

2020 WL 8187547, at *4 (D.Minn. Oct. 9, 2020) ("A person aims a taser like a gun, and

the taser projects a red dot that functions as an aiming dot."), *report and*

*recommendation adopted*, 2021 WL 168466 (D.Minn. Jan. 19, 2021); *Piper v. City of*

*Elmira*, 12 F.Supp.3d 577, 585 (W.D.N.Y. 2014) (referencing defendant "pointed his

taser's red 'laser sight'" at plaintiff).  Thus, even if the video revealed a red light was

observed in the cell, it would not establish that a taser was in fact used by an officer,

unidentified here, on Plaintiff.  Similarly, Plaintiff's reliance on Plaintiff's Exh. 13 (Dkt.

138 at 55) which, according to Plaintiff's handwritten notation on the Exhibit, shows

Defendant officer's hand on a taser gun, is not sufficiently probative to avoid summary

judgment for two reasons.  First, the photo is too shadowy to be clearly discernible to

establish what Plaintiff asserts it shows.  Second, it is not attributable to any particular

Defendant. The same deficiencies are evident in Plaintiff's Exh. 13 purporting to show a

silver object in the hand of a Defendant near Plaintiff's body while Plaintiff lay on the

floor after the apparent seizure.

Further, Defendants' use of force to restrain Plaintiff when the EMTs attempted to

place Plaintiff on a gurney for transporting Plaintiff to ECMC represents no material issue of fact requiring trial on this part of Plaintiff's excessive force claim.  First, Plaintiff has no recollection of the event after falling to the cell floor, *see* Plaintiff's § 50-h examination (Defendants' Exh. B) (Dkt. 131-1 at Lines 45-46) ("I fell down . . . I don't know what happened after that.")  Therefore, Plaintiff's assertions that excessive force was applied by Defendants after Plaintiff's seizure is based on inadmissible speculation. *See F.D.I.C. v. Great American Ins. Co.,* 60 F.3d 288, 292 (2d Cir. 2020) (non-moving party may not rely on conclusory allegation or unsubstantiated speculation to avoid summary judgment).  Significantly, Plaintiff does not dispute the EMTs efforts to place him on the gurney required significant physical struggle by Defendants and the EMTs. Moreover, Plaintiff admits that it would be reasonable to find "that Plaintiff . . . resisted Defendants and/or became violent and that Defendants simply did their best to address a 'tense, rapidly evolving situation' and prevent Plaintiff from injuring himself and others."  Plaintiff's Declaration ¶ 41, Dkt. 138 at 21-22.  *See Yevstifeev v. Steve*, 860 F.Supp.2d 217, 221-22 (W.D.N.Y. 2012) (granting defendant summary judgment finding police did not use excessive force in restraining plaintiff to gurney to transport plaintiff to hospital for mental hygiene examination).  Under the Fourth Amendment, a use of force will generally be found to be excessive only where "it is objectively unreasonable 'in light of the facts and circumstances confronting [the arresting officer,] without regard to [his] underlying intent or motivation.'"  *Id.* (quoting *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004), *quoting Graham v. Connor*, 490 U.S. 386, 397 (1989)); *Lennon v. Miller,* 968 F.3d 150, 155 (2d Cir. 2020) (accord).  Here, given the apparent need to transport Plaintiff to a hospital, and Plaintiff's admitted resistance to being placed on the

gurney, no material issue of fact is presented as to whether the amount of force used to secure Plaintiff to the gurney by Defendants and the EMTs was reasonable.

As to Defendant McKnight, Plaintiff fails to provide any credible evidence supporting Plaintiff's allegation that McKnight used a taser on Plaintiff.  Specifically, Plaintiff avers that "Plaintiff underlines interprets that officers assaulted and Tased him and elector shocked him.  That is Officer McKnight used his Taser . . . against Plaintiff." [9]  Plaintiff's Declaration ¶ 45, Dkt. 138 at 21.  *See Great American Ins. Co.,* 607 F.3d at 292.  The same can be said for Plaintiff's assertion, Plaintiff's Statement of Facts, Dkt. 138 at 7, that Plaintiff "underlines beliefs [*sic*]" that Humphrey told McKnight to tase Plaintiff.  Based on the instant record, the court finds Plaintiff has failed to point to any countervailing evidence establishing a material issue of fact as to Defendants' purported use of a taser or other electrical stimuli on Plaintiff's body prior to Plaintiff's seizure while seated in Cell No. 12 or thereafter.  Although the video does not include the time period prior to the seizure, several facts support this conclusion.

First, at his § 50-h examination conducted less than three months after the incident, Plaintiff made no mention of being tased while in Defendants' custody.  *See* Defendants' Exh. B 7-10 (131 at 7-18) at 45 (Dkt. 131-1 at 14 at 7-10) ("That's the last thing [being fingerprinted] I remember is going down of the ground and I started crawling").  Second, as confirmed by the video the door to Plaintiff's cell was closed at the time Plaintiff was seated on the bench just before the seizure befell him supporting the reasonable inference that no Defendant could have entered the cell to tase or electrocute Plaintiff at that time and Plaintiff does not aver otherwise.  Third, Plaintiff

---

[9]   Unless indicated otherwise all underlining added.

fails to proffer any medical evidence that he was in fact tased while in the cell and a review of Plaintiff's diagnostic report while at ECMC, Plaintiff's Exh. 12, Dkt. 138 at 52-53, fails to indicate Plaintiff stated to his examining physician he had been tased. Although firing a taser at the human body can cause seizures, the most common effects are superficial burns or small puncture wounds caused by the metal probes that deliver the current.  *See* Dr. Sima Patel*, How Getting Struck By A Taser Affects The Human Body*, https://abcnews.go.com/health/struck-taser-affects-human-body/stor.  Here, as stated, Plaintiff's medical record, based on a doctor's interaction with Plaintiff immediately following the incident, does not indicate physical signs or other evidence of Plaintiff being tased.  Accordingly, Plaintiff's allegation to the contrary is unsupported by admissible evidence sufficient to create a material issue of fact regarding this claim. *See In re Omnicom Group, Inc. Sec. Litig*, 597 F.3d at 509 (defendant entitled to summary judgment when "the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on" an essential element of a claim on which the plaintiff bears the burden of proof).  Moreover, Plaintiff's claims of failure to train, intervene, or supervise also fail as absent an underlying constitutional violation by a named Defendant, such claims may not be maintained.  *See Raspardo v. Carlone,* 770 F.3d 97, 129 (2d Cir. 2014) (concluding that absent an underlying constitutional violation by a specific defendant, there cannot be supervisory liability). Therefore, Defendants' alternative summary judgment motion directed to Plaintiff's § 1983 claims, as alleged in Counts I, III, and IV, should be GRANTED.


(4)    <u>Plaintiff's State Claim For Assault and Battery</u>.

In Plaintiff's Count II, Plaintiff alleges Defendants committed an assault and battery upon Plaintiff, a claim based on New York law.  Pursuant to 28 U.S.C. § 1367(a), (c) ("§ 1367(a)"), a district court may exercise jurisdiction over a claim based on state law where a claim is so related to a § 1983 claim that they form part of the same case or controversy if the court finds such claim does not present a novel question of state law, doesn't predominate over the federal claim, or if the court has not dismissed all federal claims.  Here, the undersigned is recommending that Plaintiff's federal § 1983 claims not be dismissed, but, rather, the court exercise jurisdiction of the § 1983 claims and that Defendants' requests for judgment on the pleadings or summary judgment be granted as to these claims.  Thus, the court has not dismissed such claims. *See Forbes v. City of Rochester*, 612 F.Supp.3d 159, 171-172 (W.D.N.Y. 2020) (allowing amended complaint to allege, *inter alia*, state claim for assault and battery as supplemental to plaintiff's 1983 claims).  Therefore, it is recommended that the court exercise supplemental jurisdiction pursuant to § 1367(a) over Plaintiff's assault and battery and conversion claims.

Under New York law, "[b]attery is the unjustified touching of another person, without that person's consent, with the intent to cause a bodily contact that a reasonable person would find offensive; '[a]ssault involves putting a person in fear of a battery.'" *Rivera v. State*, 142 N.E.3d 641, 644-45 (N.Y. 2019) (quoting *Jeffreys v. Griffin*, 801 N.E.2d 404 (2003)).  Here, the physical encounter between Plaintiff and Defendants Blatchford and McKnight along with the EMTs was justified as a reasonable response, involving physical restraints, to Plaintiff's refusal to be placed on the gurney and no material issues of fact are presented with respect to Plaintiff's excessive force claim

regarding this issue.  *See Yevstifeev,* 860 F.Supp.2d at 221-22 (granting defendant

summary judgment finding police did not use excessive force in restraining plaintiff to

gurney to transport plaintiff to hospital for mental hygiene examination).  *See also*

Plaintiff's admission to this effect.  Plaintiff's Declaration ¶ 41, Dkt. 138 at 21-22.  As

discussed, *see* Discussion, *supra,* at 16-17, Plaintiff fails to plead that any identifiable

Defendant acted unnecessarily in securing Plaintiff to the gurney.  Further, Plaintiff

points to no evidence than any Defendant participated in a battery against Plaintiff.  *See*

*Boyler v. City of Lackawanna*, 287 F.Supp.3d 308, 326-27 (W.D.N.Y. 2018) (granting

summary judgment in favor of defendant police officer on the plaintiff's New York

common law battery claim where the plaintiff failed to adduce any evidence the

defendant participated in the plaintiff's arrest during which the asserted battery

occurred) (quoting *De Ratafia v. County of Columbia*, 2013 WL 5423871, at *9

(N.D.N.Y. Sept. 26, 2013) ("In the absence of factual allegations establishing that

defendant Harrison was personally involved in the alleged state law torts of assault[

and] battery, . . . these claims . . . also fail to state a cause of action under New York

law.") (alterations in *Boyler*)).  Therefore, Defendants are entitled to Rule 12(c) relief or

summary judgment on this claim.  Accordingly, Defendants' Rule 12(c) or Summary

Judgment Motion directed to this claim (Count II) should be GRANTED.

(5)    <u>Plaintiff's Conversion Claim</u>.

        Although Defendants assert Plaintiff does not allege a conversion claim for

Plaintiff's property in the Amended Complaint, Defendants request the court dismiss

Plaintiff's conversion claim as pleaded in Count V.  *See* Defendant's Memorandum at

23-23 (Dkt. 131 at 23-24).  Specifically, Defendants contend that such claim is time-

barred by New York state law as Plaintiff failed to assert such claim in Plaintiff's Notice of Claim, Defendants' Exh. A, as required by New York law, N.Y. Gen Mun. Law § 50-e[1](a), the one-year plus 90 days-period after the event giving rise to the claim set forth in N.Y. Gen. Municipal Law, for suit on such claim, N.Y. Gen. Mun. Law § 50-i[1] expired on June 28, 2019 and Plaintiff filed this action on March 16, 2020.  Plaintiff's response is limited to Plaintiff's assertion, without authority, that Plaintiff's conversion claim should not be barred because Plaintiff's attorney failed to state such claim in Plaintiff's Notice of Claim.  See Plaintiff's Answer to Defendant's Memorandum of Law at Dkt. 144 at 9.  Accordingly, Defendants' Rule 12(c) or Summary Judgment Motion directed to Count V should be GRANTED.

(6)      Plaintiff's *Monell* Claim Against Defendant City of Buffalo.

Under *Monell v. Dept. of Social Svs. Of the City of New York*, 436 U.S. 658 (1978) (*Monell*), damages for a plaintiff's civil rights violations may be obtained against a municipality where municipal policy and practices give rise to such a violation.  *See Jones v. Town of East Haven*, 691 F.3d 72, 81 (2d Cir. 2012) (holding evidence was insufficient to prove town had custom, policy or usage of deliberate indifference to abuse of plaintiff as required to support § 1983 municipal liability).  However, for *Monell* liability to attach, plaintiff must be found to have suffered a violation of his constitutional rights caused by a municipal actor.  *See Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006) (*Monell* liability requires the existence of an "underlying constitutional violation" by a municipal defendant).  Here, Plaintiff asserts no allegation sufficient to accuse any Defendant of excessive force, *see* Discussion, *supra,* at 16-17, and the court has found no evidence requiring trial of such constitutional violation against

Plaintiff by any individual Defendant acting as an employee of the City.  *See*, Discussion, *supra,* at 18-23.  Accordingly, summary judgment on Plaintiff's *Monell* claim against Defendant City of Buffalo should also be GRANTED as to Plaintiff's Count VI.

(7)   <u>Qualified Immunity</u>.

Defendants alternatively argue Plaintiff's § 1983 excessive force claim asserted as a violation of the Fourth Amendment is barred by qualified immunity.  Dkt. 131 at 19-20.  Plaintiff argues in opposition that substantial issues of material fact preclude qualified immunity with regard to this claim.  Dkt. 138 at 18-19.  Defendants do not argue in further support of summary judgment based on qualified immunity.

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982).  Even if the rights in question are clearly established, a government actor may still be shielded by qualified immunity if "it was objectively reasonable for the public official to believe that his acts did not violate those rights." *Kaminsky v. Rosenblum,* 929 F.2d 922, 925 (2d Cir.1991); *Magnotti v. Kuntz,* 918 F.2d 364, 367 (2d Cir.1990).

When analyzing a claim of qualified immunity, the court first inquires whether the facts, taken in the light most favorable to the party asserting the injury, can demonstrated a violation of a constitutional right occurred.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  Government officials performing discretionary functions generally are shielded by qualified immunity from liability in their individual capacities, *see Frank v. Reilin*, 1 F.3d 1317, 1327 (2d Cir. 1993), "insofar as their conduct does not violate

clearly established statutory or constitutional rights of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "If it was objectively reasonable for the defendant to believe that his act did not violate the plaintiff's constitutional rights, the defendant may nevertheless be entitled to qualified immunity." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987); *Lowth v. Town of Cheektowaga*, 82 F.3d 563, 568-69 (2d Cir. 1996).

In the instant case, assuming, *arguendo*, Plaintiff's Fourth Amendment excessive force claim survives Defendants' arguments for judgment on the pleadings or for summary judgment, then Defendants are not entitled to qualified immunity on the claim because the use of excessive force, which can include the unnecessary use of a taser, in arresting a defendant, was clearly established by March 30, 2018.  *See Penree by Penree v. City of Utica, New York,* 694 Fed.Appx. 30, 33-34 (2d Cir. 2017) (finding defendant police officers were not qualifiedly immune from liability on the plaintiff's excessive force claim where the defendant officers' use of a taser in arresting the plaintiff, who was not fleeing or resisting arrest, was unnecessary).  Here, Plaintiff was already in custody when he was allegedly tased.  Defendants' motion for summary judgment thus should be DENIED with regard to the assertion of qualified immunity.

## CONCLUSION

Based on the foregoing, Defendants' motion for a further extension of time (Dkt. 124) is moot and is DISMISSED; Plaintiff's motion to strike and for default judgment (Dkt. 129) is DENIED.  Defendants' motion for judgment on the pleadings pursuant to Rule 12 (Dkt. 131) should be GRANTED; alternatively, Defendants' motion for summary

judgment (Dkt. 131) should be GRANTED in part, and DENIED in part.

Respectfully submitted,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE


SO ORDERED as to Defendants'
Second Request For Extension of Time
(Dkt. 124) and Plaintiff's Motion to
Strike and Enter Default
Judgment (Dkt. 129)

/s/ *Leslie G. Foschio*
_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

Dated:  August 10, 2023
            Buffalo, New York

Any appeal of this Decision and Order must be taken by filing written

objection with the Clerk of Court **not later than 14 days** after service of this

Decision and Order in accordance with Fed.R.Civ.P. 72(a).

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn,* 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services,* 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited,* 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Decision and Order / Report and Recommendation to the attorney for Plaintiff and to Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      August 10, 2023
               Buffalo, New York